IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:16 CR 251 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Ronald R. Myles, Jr., | |
| Defendant. | |

## INTRODUCTION

On February 16, 2017, a jury convicted Defendant *pro se* Ronald Myles of two counts of bank robbery with a dangerous weapon under 18 U.S.C. § 2113(a) & (d).  Two weeks later, Myles timely moved for acquittal under Federal Criminal Rule 29 (Doc. 61), based on his belief that the evidence presented at trial was insufficient to sustain his conviction.  Specifically, Myles argues (1) the Government failed to present evidence sufficient to identify him as the bank robber; (2) the evidence seized from Myles' hotel room was mishandled; (3) this Court's answer to a jury question was inaccurate or misleading; and (4) his prosecution violated the statute of limitations and the deadlines provided in 18 U.S.C. § 3161(b).  The Government responded (Doc. 63), and the matter is fully briefed.

## BACKGROUND

On June 4, 2016, a tall, thin black male with a bandana over his face robbed the Commercial Savings Bank on Barks Road in Marion, Ohio.  The robber wore dark clothing and two-toned, white-soled shoes.  He brandished a firearm, swore at bank employees, and threatened that he would shoot

them if they did not open their teller drawers. The robber jumped over the counter to grab the money -- nearly $7,000 -- out of the drawers before fleeing in a black Mercedes. The police began an investigation, and the Marion Municipal Court issued a warrant for Myles' arrest on June 6.

On June 17, a tall, thin black male with a bandana over his face robbed the Commercial Savings Bank on Jamesway Drive in Marion. The robber wore dark clothing and bright white sneakers. As in the June 4 robbery, he brandished a firearm, swore at bank employees, threatened them, and jumped over the counter to grab the money -- this time nearly $140,000 -- out of both the teller drawers and the bank vault. The robber fled in a vehicle described as a silver or white sedan, possibly a Mercedes, with the license plate and headlights obscured. Myles was arrested later that day at a Days Inn in Dayton. Police obtained a search warrant for his hotel room and vehicle, and they discovered a duffel bag containing $136,500 in cash, as well as other evidence presented at trial.

Myles was originally indicted on state charges by a Marion County grand jury on June 30. The state charges were dismissed following his federal indictment on one count of bank robbery with a dangerous weapon under 18 U.S.C. § 2113(a) & (d) for the June 17 robbery (Doc. 8). The Government later filed a Superseding Indictment charging Myles with a second count of bank robbery with a dangerous weapon for the June 4 robbery (Doc. 39). Myles elected to represent himself *pro se*, with the assistance of stand-by counsel (Doc. 23). His pretrial Motion to Dismiss (Doc. 25) on jurisdictional and speedy trial grounds was denied (Doc. 36).

### LEGAL STANDARD

In evaluating motions under Federal Criminal Rule 29, this Court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307,

319 (1979) (emphasis in original); *see also United States v. Coleman*, 458 F.3d 453, 456 (6th Cir. 2006). This Court does "not reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] legal judgment for that of the jury," *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005), but rather "gives the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). There is a "strong presumption in favor of sustaining a jury conviction," *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994), and a defendant seeking judicial reversal of a jury verdict bears a "very heavy burden." *Abboud*, 438 F.3d at 589; *see also United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984) (holding reversal of jury verdict is only appropriate when "not supported by substantial and competent evidence upon the record as a whole"). In short, granting Rule 29 motions should be "confined to cases where the prosecution's failure is clear." *Burke v. United States*, 437 U.S. 1, 17 (1978).

## DISCUSSION

**Evidence of Identity of the Bank Robber**

Myles notes that none of the Government's witnesses identified him as the individual who robbed the Commercial Savings Banks on Barks Road and Jamesway Drive -- which is unsurprising, as the bank robber wore a mask. Myles argues that without an affirmative eyewitness identification, his conviction cannot stand. This argument fails, for sufficient other evidence supports the jury's findings. The Government introduced the following circumstantial evidence of the identity of the bank robber:

- Myles matched the robber's general physical appearance, as captured by bank surveillance. Both were tall black males with a trim build, short hair, and a tattoo on the right side of the neck (Trial Exs. 134–35).

- Myles had the same clothing as the robber, including two-toned, white-soled shoes matching the ones worn by the robber on June 4 (Trial Exs. 1, 64, 74–80), and bright white sneakers like those worn by the robber on June 17 (Trial Exs. 3, 57, 81–86, 151–53). Myles also possessed a backpack with the same multicolored circular pattern as the one carried by the robber on June 17 (Trial Exs. 42, 84).

- Myles owned cars that matched the description of both getaway vehicles -- namely, an older model black Mercedes used during the June 4 robbery and an older model silver Mercedes used during the June 17 robbery.

- An individual matching Myles' description was observed in a vacant lot, taping up the headlights of a silver Mercedes shortly before the June 17 robbery (Trial Exs. 97–100). Police recovered pieces of white cloth and plastic tape from the vacant lot that matched items found in Myles' possession, as well as a piece of the "temp tag" from Myles' silver Mercedes (Trial Ex. 33).

- A search of Myles' hotel room uncovered journals in which Myles appeared to plan the robberies. The journal entries included references to "licks" (slang for robbery or theft) and comments such as: "Comment on level of money in vault?"; "Goin in no matter what"; and "We goin to get da money now" (Trial Exs. 141–46).

- Perhaps most importantly, police discovered a duffel bag in Myles' hotel room containing $136,500 in cash (Trial Exs. 131–32). The cash was still bound with Commercial Savings Bank bands and marked with the initials of the tellers (Trial Exs. 93–96). Police discovered an additional $1,029 in Myles' wallet, which included the five bait bills stolen from the teller drawers of the Jamesway branch.

In short, the Government presented significant circumstantial evidence pointing to Myles as the bank robber. That the evidence was circumstantial rather than direct is immaterial, as it is well settled that "circumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (quoting *Stone*, 748 F.2d at 362). Viewing the evidence as a whole, the jury reasonably inferred that Myles committed the bank robberies. Thus, there is sufficient and competent

evidence to sustain the jury's verdict of guilt on both counts of bank robbery with a dangerous weapon.

### Handling of Evidence

Myles claims Lt. Christy Utley, one of the law enforcement officers involved in the investigation, "tampered" with evidence by transporting the cash seized from Myles' hotel room to a local PNC Bank to be counted using their bill counting machine. Utley testified she did so at the request of FBI case agent Matt Komar, and the evidence remained within her custody while it was electronically counted at the bank. Myles contends, as he did at trial, that Utley needed a court order to remove the cash from the evidence locker (Doc. 61 at 5). He further suggests this handling of the evidence reveals a nefarious "financial scheme" by the law enforcement officers to "robb [sic] [him] of his music career" (*id.* at 2).

As the Government correctly notes, testimony at trial contradicted Myles' theory that law enforcement officers are required to obtain a court order under these circumstances. In any event, Myles' argument does not confront the sufficiency of the Government's evidence so much as the credibility of its witnesses. Determinations regarding the credibility of witnesses and the weight of their testimony are the sole province of the jury, and this Court is expressly prohibited from reevaluating those judgments on a motion for acquittal under Federal Criminal Rule 29. *See Martinez*, 430 F.3d at 330.

### Answer to Jury Question

During deliberations, the jury submitted the following written question: "Was there a bank audit on how much money is missing from second robbery at Jamesway [sic]" (Court Ex. A). After discussion with the parties regarding the proper interpretation of the question and proposed language

in response, this Court answered, "[y]es, Mr. Seth Kinley so testified. However, there is no exhibit" (*id.*).

Myles now argues that he did not agree to the wording of the response. But his current dissatisfaction is belied by the record, which reflects that both parties consented to this Court's preferred language before it was submitted to the jury. Myles also claims the answer is inaccurate or misleading because Kinley's testimony is not evidence of whether the bank conducted an audit. This argument is both factually and legally incorrect. Although neither party introduced documentary evidence on this topic, Kinley testified from personal knowledge that the bank conducted an audit following the robberies. This was competent evidence that an audit, in fact, occurred. Thus, this Court's response to the jury question was both accurate and within its discretion. *See United States v. Khalil*, 279 F.3d 358, 367 (6th Cir. 2002) ("A reviewing court may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading and prejudicial.") (citation omitted).

Moreover, as the Government correctly notes, Federal Criminal Rule 29 permits acquittal only if the evidence is insufficient to sustain the conviction. As discussed in some detail above, the conviction in this case was supported by sufficient evidence.

**Statute of Limitations**

Myles contends, as he has done at various points throughout this case, that his prosecution violated the statute of limitations and various other statutory and constitutional timeliness requirements. His argument regarding the applicable statute of limitations is without merit, for Myles was promptly tried seven months after the June 2016 bank robberies. *See* 18 U.S.C. § 3282(a) (five-year statute of limitations for non-capital offenses). His claim that the original Indictment is untimely under 18 U.S.C. § 3161(b) is no more persuasive. Myles was arrested by *state* authorities on June

17, but he did not enter *federal* custody until a federal writ was issued at the end of July. *See United States v. Blackmon*, 874 F.2d 378, 381–82 (6th Cir. 1989) ("Regardless of the degree of federal involvement in a state investigation and arrest, only a federal arrest initiates the running of the time limitation established by 18 U.S.C. § 3161."). He was then indicted on federal charges on August 3 -- well within the thirty-day limit under 18 U.S.C. § 3161(b).

## CONCLUSION

The jury guilty verdicts are supported by the record evidence. The Motion for a Judgment of Acquittal (Doc. 61) is denied.

IT IS SO ORDERED.

                                                                             s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 29, 2017